IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


SUELYN N. SMITH,

                Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

              Defendant.

No. 3:12-cv-00663-HZ

OPINION & ORDER


Merrill Schneider
SCHNEIDER KERR LAW OFFICES
PO Box 14490
Portland, OR 97293
      Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Daphne Banay
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue, Suite 2900 M/S 901

1 - OPINION & ORDER

Seattle, WA 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Suelyn N. Smith brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner found Smith not disabled and denied her application for Title II disability insurance benefits. For the reasons set forth below, the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## PROCEDURAL BACKGROUND

    On September 26, 2007, Plaintiff applied for social security disability insurance benefits alleging disability beginning on March 28, 2007. R. at 154-58. Plaintiff was 44 years old at the time she applied for benefits. R. at 154. Plaintiff's claims were denied initially on December 27, 2007, and upon reconsideration on August 14, 2008.

    Plaintiff had a hearing on August 12, 2010, before Administrative Law Judge John J. Madden, Jr. (the "ALJ"). R. at 131, 32. On September 9, 2010, the ALJ found Plaintiff was not disabled. R. at 19-37. On September 23, 2010, Plaintiff requested a review of the ALJ's decision. R. at 17-18. On February 10, 2012, the Appeals Council issued an order denying Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. at 1-6. This appeal followed.

## FACTUAL BACKGROUND

    The parties are familiar with the medical evidence and other evidence of the record. Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 28, 2007. R. at 24, Finding 2. At step two, the ALJ found Plaintiff had the "following severe impairments: fibromyalgia; mild degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of knees; major depressive disorder; post-traumatic stress disorder; and attention deficit/hyperactivity disorder". R. at 24, Finding 3. At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 25, Finding 3.

At step four, the ALJ found Plaintiff had the following RFC:

[C]laimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) except due to the effects of chronic pain and fatigue attributable to her severe physical impairments, she can perform tasks involving no more than 6 hours of sitting, or more than 6 hours of standing/walking in an 8-hour workday. Such tasks may involve occasional stooping, kneeling, crouching, crawling, or climbing of ramps or stairs, but must avoid any climbing of ladders, ropes, or scaffolds. She can frequently, but not constantly, engage in bilateral overhead reaching, as well as fingering, feeling, or handling with her right hand. Her left hand is not limited. Due to symptoms of anxiety and distractibility attributable to her severe mental impairments, she is limited to simple, repetitive, unskilled work that involves only occasional contact with the public.

R. at 26, Finding 5.

At step five, the ALJ found Plaintiff was not disabled because there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  R. at 31, Finding 11.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  Howard, 782 F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff makes the following assignments of error by the ALJ: (1) the ALJ failed to provide clear and convincing reasons supporting his determination that she was not credible; (2) the ALJ improperly rejected the opinion of Maribeth Kallemeyn, Ph.D.; and (3) the ALJ erred by

failing to address the opinion of Satyanarayana Chandragiri, M.D.  I address each assignment of error in turn.

## I. Plaintiff's Credibility

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's testimony regarding the severity of symptoms.  See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Id.  (citation omitted).  When doing so, the claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id.  (citation and internal quotation marks omitted).  "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection."  Id.

"To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . : (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).  The ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature,

onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." Id.

Here, the ALJ concluded that Plaintiff's "subjective complaints . . . are not fully supported by the objective medical findings . . . ." R. at 27. The ALJ further concluded that although Plaintiff "stopped working in March 2007 due to physical discomfort, medical records indicate that by August 2007 she was responding well to treatment to such an extent that 'she really was not hurting.' Treating physician Tracy Read, M.D., reported that the claimant's sleep and energy were improved with medication and pool therapy". R. at 28 (citing R. at 541). The ALJ also found Plaintiff's credibility was "undermined by potential drug seeking behavior, wherein Dr. Brumbaugh that the claimant requested [sic] a 'refill of hydrocodone' despite the fact the physician had never prescribed the drug and considered it ill-advised in the claimant's physical setting . . . ." R. at 29 (citing R. at 473). The ALJ further found that Plaintiff "displayed an apparent lack of candor regarding her history of alcoholism in September 2008, telling Dr. Brumbaugh that she abstained from alcohol–despite reporting on her intake sheet that she consumes 6 wine coolers per week". Id. (citing R. at 475). Finally, the ALJ concluded that Plaintiff's credibility was "eroded by evidence submitted by the Cooperative Disability Investigation Unit (CDIU) in August 2008 stating that the claimant was able to walk, gesture with her hands, and transfer from a seated to a standing position, and vice versa, without any sign of pain or discomfort" and that "claimant told investigators that she occasionally babysits her grandchildren". Id.

## A. "Solely Because" and Circular Reasoning

Plaintiff contends the ALJ erred because his finding that her "subjective complaints . . . [were] not fully supported by the objective medical findings [in] . . . the . . . record" was legally

erroneous.  Plaintiff also contends that the ALJ's adverse credibility was erroneous because his conclusion that her statements were inconsistent with her RFC amounted to improper circular reasoning.

Plaintiff's arguments lack merit.  Although an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence", the ALJ gave a number of other reasons supporting his adverse credibility determination.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).  For example, the ALJ found Plaintiff not credible because she responded well to treatment, her symptoms improved with medication and therapy, and she was not candid about her history of alcoholism.  As discussed below, these were not circular and amounted to clear and convincing reasons.

**B. Tracy Read, M.D.**

Plaintiff asserts that the ALJ's adverse credibility finding was erroneous because the ALJ improperly relied on a selective reading of Dr. Read's opinion.  In support of her argument, Plaintiff cites to a portion of Dr. Read's July 31, 2007, opinion stating that Plaintiff was "not doing well" and had "not been doing well for a long time now."  Pl.'s Opening Br., p. 11 (citing R. at 542).  Plaintiff also states:

> The record after [Plaintiff's] August 18, 2007, appointment shows that she was diagnosed with fibromyalgia, feeling 50% better and wants to try to go back to work when her short term disability has ended.  The doctor recommended that she would only try to work 6 hours a day because of her "chronic illness."  The Dr. Read [sic] adds that she should look into a fibromyalgia support group.  In October 2007, Dr. Read cleared Plaintiff for full-time duties because Plaintiff's short-term disability through her employer ended, however, she expressed doubt that Plaintiff could return to her former position without being in "severe pain."

Id. (citing R. at 537, 539).

When read in its entirety, Dr. Read's medical opinion supports the ALJ's adverse credibility determination. The record shows that after Dr. Read's July 31, 2007, report, Dr. Read stated on August 16, 2007, that Plaintiff's "pain was basically gone" after treating it with Ultram and that "when [Plaintiff] saw the physical therapist[,] . . . she really was not hurting". R. at 541. Dr. Read's August 16, 2007, report also shows that Plaintiff's pain level was decreasing, stating that Plaintiff's "pain level yesterday was maybe a 5/10 . . . [and] [r]ight now, it is maybe a 4/10." Id. On September 13, 2007, Dr. Read stated that pursuant to her physical therapy, Plaintiff was "doing about 50 percent better." R. at 539.

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. See 20 C.F.R. § 416.929(c)(3)(iv). Consistent with the ALJ's conclusions, here the record shows that Plaintiff was responding well to treatment. The ALJ's reliance on the effectiveness of Plaintiff's medications and treatment as stated in Dr. Read's notes support his conclusion that Plaintiff's symptoms were not as severe as she alleged.

Despite her allegations of pain, Dr. Read also opined that Plaintiff was capable of working. In fact, Dr. Read concluded on September 13, 2007, that Plaintiff "need[ed] to go back to work" and that working "six hours a day" would be a "reasonable accommodation for somebody with [Plaintiff's] chronic illness". Id. A week later, on September 20, 2007, Dr. Read cleared Plaintiff for "full-time duties". R. at 537. When read as a whole, Dr. Read's opinion supports the ALJ's conclusion that Plaintiff's statements regarding the severity of her symptoms were not credible. The fact that Dr. Read recommended at one point that Plaintiff look into a fibromyalgia support group and would be in "severe pain" does not render the ALJ's adverse credibility finding erroneous under the circumstances here. R. at 539.

In short, the ALJ properly relied on Dr. Read's opinion when making his adverse credibility finding.

**C. Lack of Candor**

The ALJ also found that Plaintiff was not credible because of her "lack of candor regarding her history of alcoholism". R. at 29. The ALJ's determination was proper.

When determining whether a claimant is credible, an ALJ may consider statements by the claimant that "appears less than candid". Smolen, 80 F.3d at 1284 (citation omitted). Here, the record shows that the ALJ discredited Plaintiff because she told Raymond B. Brumbaugh, M.D., a pain specialist, on the one hand that that she was abstaining from alcohol, while one the other hand reporting on Dr. Brumbaugh's "intake sheet" that she consumes "6 wine coolers per week". R. at 29 (citing R. at 475). Dr. Brumbaugh's September 2, 2008, chart notes recognize this inconsistency and state that although Plaintiff told him that she was "an alcoholic until two years ago" and therefore "does not drink", she "report[ed] having 6 wine coolers per week" on her "intake sheet". R. at 475. Plaintiff's less than candid statements are supported by substantial evidence in the record and amount to clear and convincing reasons supporting the ALJ's adverse credibility determination.

In sum, the ALJ's adverse credibility determination was supported by clear and convincing reasons and was supported by substantial evidence in the record.[1]

**II. Dr. Kallemeyn**

Plaintiff contends that the ALJ improperly discounted the opinion of Dr. Kallemeyn, who performed a Psychodiagnostic Evaluation of Plaintiff. The weight given to the opinion of a physician depends on whether it is from a treating physician, an examining physician, or a non-

---

[1] Having so concluded, I need not address whether the ALJ properly determined that Plaintiff exhibited drug-seeking behavior or whether Plaintiff's statements conflicted with the evidence submitted by the CDIU investigative report when concluding Plaintiff was not credible.

examining physician.  See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  More weight is given to the opinion of a treating physician who has a greater opportunity to know and observe the patient as an individual.  Id.  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id.; Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).  Even if the opinion is contradicted by another physician, the ALJ may not reject it without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066; see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.  The opinion of a non-examining physician, however, may serve as substantial evidence when it is supported by and consistent with other evidence in the record.  Morgan, 169 F.3d at 600.   An ALJ may reject a doctor's opinion if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks and citation omitted).

Here, Dr. Kallemeyn diagnosed Plaintiff with "Posttraumatic stress disorder[;] Major depressive disorder, moderate to severe[;] Alcohol dependence[; and] History of cocaine and cannabis abuse[.]"  R. at 349.  "Per [Plaintiff's] report", Dr. Kallemeyn also assessed Plaintiff with "fibromyalgia, knee problems, possible arthritis".  R. at 349.  The ALJ, however, gave Dr. Kallemeyn's opinion "little weight", reasoning that it was "inconsistent with evidence submitted from CDIU" and "relie[d] primarily on the claimant's own report of her mental functioning– which . . . [was] not entirely credible."  R. at 30.

11 - OPINION & ORDER

Plaintiff does not specifically challenge the ALJ's reasoning that Dr. Kallemeyn's evaluation relied primarily on Plaintiff's own self-reports. More important, because Dr. Kallemeyn's Psychodiagnostic Evaluation shows that it was based to a large extent on Plaintiff's self-reports and because the ALJ properly found Plaintiff was not entirely credible, the ALJ did not err when assigning Dr. Kallemeyn's Psychodiagnostic Evaluation "little weight".

## III. Dr. Chandragiri

Plaintiff contends that the ALJ erred by failing to address the Initial Psychiatric Evaluation completed by Dr. Chandragiri, Plaintiff's treating psychiatrist. The Commissioner concedes that the ALJ did not consider Dr. Chandragiri's opinion. Since "[t]he ALJ must consider all medical opinion evidence", the ALJ's failure to consider Dr. Chandragiri's evaluation was legally erroneous. See Tommasetti, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)).

The Commissioner, however, contends that the ALJ's failure to consider Dr. Chandragiri's evaluation was harmless error. I disagree.

A court "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless where they are "inconsequential to the ultimate nondisability determination." Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, the record shows that Dr. Chandragiri assessed Plaintiff with, among other things, a current Global Assessment Functioning ("GAF") score of 40.[2] R. at 446. The record also shows that Dr. Chandragiri assessed Plaintiff with severe problems with respect

---

[2] A GAF score of 40 is defined as "**[s]ome impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders Text-Revision at 34 (4th ed. 2000) (DSM-IV-TR) (bold font in original).

to "finances", "occupation", "primary support group", and "social environment".  Id.  The

limitations set forth in Dr. Chandragiri's evaluation are probative to Plaintiff's alleged disability

and are consequential to the ALJ's non-disability determination.  Accordingly, the ALJ's failure

to address Dr. Chandragiri's evaluation was not harmless error.[3]

## IV. Remand

Plaintiff asserts that the evidence establishes that she is disabled and requests that this

Court remand her case for the immediate award of benefits.  The decision whether to remand for

further proceedings or for immediate payment of benefits is within the discretion of the court.

Harman v. Apfel, 211 F.3d 172, 1178 (9th Cir. 2000).  The issue turns on the utility of further

proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be

served by further administrative proceedings or when the record has been fully developed and

the evidence is insufficient to support the Commissioner's decision.  Strauss v. Comm'r of the

Soc. Sec. Admin., 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379

F.3d 587, 593 (9th Cir. 2004)).

Under the credit-as-true rule, evidence should be credited and an immediate award of

benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting

such evidence; (2) there are no outstanding issues that must be resolved before a determination

of disability can be made; and (3) it is clear from the record that the ALJ would be required to

find the claimant disabled were such evidence credited.  Strauss, 635 F.3d at 1138.

---

[3] The Commissioner contends that Dr. Chandragiri's opinions are undermined by his chart notes.
Suffice it to say, this reason was not proffered by the ALJ because he did not address Dr.
Chandragiri's opinion.  It would therefore be improper for me to accept the Commissioner's
argument because it was not provided by the ALJ.  Orn, 495 F.3d at 630 (9th Cir. 2007) (a court
may "review only the reasons provided by the ALJ in the disability determination and may not
affirm the ALJ on a ground upon which he did not rely") (citation omitted).

Here, there are outstanding issues that must be resolved before a determination of disability may be made.  It is not clear from the record that the ALJ would be required to find the claimant disabled if the ALJ were to credit Dr. Chandragiri's opinions as true.  The Court therefore declines to direct the immediate payment of benefits in this instance.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion & Order.  The ALJ is to address Dr. Chandragiri's opinion and if necessary, the ALJ is to revise Plaintiff's RFC determination and incorporate any revised findings, if applicable, into the ALJ's conclusions at steps four and five of the sequential analysis.

IT IS SO ORDERED.

Dated this ___14___ day of ___May___, 2013.


MARCO A. HERNANDEZ
United States District Judge

14 - OPINION & ORDER